## WILLIAM L. WEBBER v. IRA E. RANDALL (ORIGINAL BILL) AND IRA E. RANDALL v. WILLIAM L. WEBBER (CROSS-BILL).[1]

*Equity practice—Appealable order.*

1. It will be noticed that the decree in this case directs that a receiver be appointed to take the said cattle and their progeny, and cause the same to be put in proper condition for market, and to sell the same, and bring the proceeds into court, to abide the further order of the court concerning the same. This portion of the decree is in accordance with the prayer of complainant's bill, and therefore he is not in a position to appeal from it; while, on the other hand, the defendant, under the repeated rulings of this Court, could have regarded that portion of the decree as final, because it dispossesses him of the possession of the property, and he could have appealed, but he has not.

2. The further order, and that portion complained of by the appellant, requires an accounting to be had, and a sale of the cattle by the receiver, and directs that, when the cattle are sold, in case the amount realized from the sale shall be less than the value of the cattle at the time of the breach of the contract, together with the progeny, computed as therein directed, a personal decree shall pass against defendant for the deficiency, together with interest. There is nothing appearing upon the record by which this Court is authorized to say that it will injure the appellant in case this decree should be carried out as written, for it is among the possibilities that a computation of the amount due him, based upon this decree, may realize as much as he claims he would be entitled to under his construction of the contract; and until a final decree is made by the court fixing the amount of money which shall be due to him there is no final order or decree from which an appeal can be taken.

Appeal from Saginaw. (Edget, J.) Submitted on briefs April 24, 1891. Decided May 8, 1891.

---

[1] A rehearing was granted in this case at the June term, 1891.

Bill for relief from a contract on the ground of non-performance by the defendant, and for the appointment of a receiver. Complainant appeals. Appeal dismissed and record remanded. The facts are stated in the opinion.

*James B. Peter* (*Wisner & Draper,* of counsel), for complainant.

*Russell C. Ostrander,* for defendant.

CHAMPLIN, C. J. This is a bill and cross-bill. In the original bill the complainant, Webber, states that he entered into a contract with Randall, which recited that Randall was the owner of certain lands in Saginaw county, Mich., which he desired to stock with Holstein-Fresian cattle, and that, complainant being the owner of such cattle, the parties agreed together that complainant's cattle should be taken by Randall, and placed upon his farm in Saginaw county, fed and cared for at Randall's expense, and that the milk and butter from said cattle should be the property of Randall, to dispose of as he might elect, for the term of five years, at which time double the number of cattle, of like sex, age, and quality, were to be returned to Webber; and to that end it was agreed that the cattle which Webber turned over to Randall were of the ages described in said contract, and all registered in the Holstein-Fresian herd-book, or in the Holstein registry, as indicated; and that Webber retained as security the ownership of said cattle and the progeny thereof, except as otherwise provided. Randall further agreed that he would take such cattle on said farm, and care for them in a first-class manner, as such animals are cared for by good breeders; that he would himself become a member of the Holstein-Fresian Association, and cause all the progeny from said stock to be registered before the same

should arrive at the age of one year, except such bull calves as Randall might think best to dispose of without registry; that he would, at the end of said five years, return to said Webber, at East Saginaw, double the number of animals so received, of like ages, like sex, and like quality as he then received. It was further agreed that, for the purpose of valuing the animals, the bull which was turned over by Webber to Randall was worth the sum of $100; that all the cows above the age of one year were worth $150 each; and all the heifer calves under the age of one year were of the value of $90 each. It was further agreed that said Randall, at his option, might at any time within six months from the date of the contract pay to Webber in cash, or in property at cash prices, for the said cattle at the prices above named, with interest at the rate of six per cent. per annum, in which case the interest of said Webber in said cattle should cease, and Randall should become the absolute owner thereof; but in case Randall within six months did not make payment as aforesaid, then said option should cease. And it was further agreed that, in case any of the cattle should die after being taken by Randall, the loss should be Randall's, the title of Webber in said cattle continuing, as in case of a conditional sale, only as a security, and subject to the provisions of the agreement; and that whatever loss might be sustained from death or disease was the risk assumed and borne by Randall, and not by Webber; and Randall agreed with Webber that he would cause said cattle to be properly housed, sheltered, and cared for during the term; that he would take special pains to keep accurate record of their breeding, and that no impurity of blood should come to any of the progeny; that he would report to Webber from time to time, and as often as twice a year, the condition of the herd, with the names and

number of the progeny thereof, and, in case he did not arrange otherwise, he would at the close of said five years return double the number of cattle, as above stated. Randall further agreed that during the period he would not use any bull in said herd except with the advice and consent of said Webber, and that all advice or consent which might be given by either party should be expressed in writing and signed by the parties.

The agreement was dated on the 2d day of November, 1888, and was executed in duplicate.

The bill further states that Randall at that time claimed to be the owner of a farm of some 3,000 acres of land, embracing entire section 1, and the N. $\frac{1}{2}$, and the E. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$, and the W. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$, and the N. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$, of section 12, in township 10 N., range 3 E., and the S. $\frac{1}{2}$ of section 36, in township 11 N., of range 3 E., and entire section 7, and entire section 18, and the N. W. $\frac{1}{4}$ of section 19, in township 10 N., of range 4 E., all in Saginaw county, Mich.; and that the farm which said agreement alluded to was the farm upon the lands above described as the lands which said Randall desired to stock with Holstein-Fresian cattle, and with reference to which the contract was made.

The bill further states that on or about the date of said contract Webber delivered to said Randall, under and in pursuance of said contract, the animals named therein, namely, 23 cows one year old and over, 16 females under one year old, and 1 bull, making a total of 40 head of cattle, which, at prices named in the contract, amounted to $4,990; and that Randall received the same, and placed them upon the farm mentioned above.

The bill then charges that Randall did not keep the terms of the contract as agreed to by him, but, on the contrary, said cattle were neglected, and were not

properly fed or housed, and they were neglected so much
that they have greatly depreciated in value, and two of
the cows, as complainant is informed and believes, have
since died in consequence of such neglect and ill treat-
ment; that Randall did not, as complainant is informed
and believes, become a member of the Holstein-Fresian
Association, and that he has not procured all the pro-
geny of said cattle to be registered, as agreed; that he
has not reported to complainant from time to time, and
as often as once in six months, the condition of said
cattle, and the names and number of those registered, as
aforesaid; that afterwards Randall sold and disposed of
said farm, and removed the cattle therefrom, or so many
thereof as were still living, to a farm, said to be owned
by him, of 200 acres, in the township of St. Charles,
only a small part of which is cultivated, and which is
not furnished with conveniences for housing and protect-
ing said cattle; that he is informed and believes that said
Randall has neglected to feed said cattle to such an
extent that they have become greatly depreciated in
value, and that really they have been starved to a point
which is cruelty on the part of any one charged with the
keeping of cattle, and that complainant is likely to loose
his security by the depreciation in value of said cattle;
that sufficient care has not been taken to preserve the
purity of blood, which in a large measure constitutes the
value of these cattle, so that they might be registered;
and in many other respects said Randall has neglected
and refused to perform his part of the agreement, and
has incapacitated himself therefrom by the sale of said
farm.

The complainant prays that, to the end that the said
cattle may be properly cared for, and that the lien of
complainant for the purchase price thereof may be
enforced, a receiver may be appointed to take care of said

cattle, and to cause them to be properly fed and put in suitable condition for market, and then cause said cattle to be sold under the direction of the court, and the proceeds thereof be applied—

1. In paying the expenses of taking said cattle into possession, and feeding and caring for the same, and the expenses of·the receiver; and—
2. To pay the balance over to the.complainant to apply upon the indebtedness existing against said Randall by reason of the premises.

And that upon such sale complainant or any other person in interest in said suit may become the purchaser; and that it may be decreed that any deficiency that may exist may be paid by said Randall to the complainant, together with interest thereon; and for general relief.   The bill of complaint was filed on the 10th day of May, 1890.

The defendant put in a general demurrer to the bill, which was overruled; and he then answered, admitting the copy of the contract attached to the complainant's bill of complaint; denying that the contract was made with reference to any particular farm; admitting the delivery of the 40 head of cattle; denying that the values, as put upon the cattle in said contract and in said bill of complaint, are, or were at the time of making said contract, true cash values; denying the several breaches of the contract therein alleged; and setting up substantive matter of defense.

He also filed a cross-bill, in which he sets up the making of the contract, and alleges that he entered upon the discharge of his duties under it immediately upon the delivery to him of the cattle, and has ever since in all respects carried out the undertaking on his part to be carried out, excepting only in matters more fully set out in his cross-bill.   He then states that the proper care of said herd required that in summer one

man should devote the greater part of his time to them, and two men in winter, and that these men so in charge of them in summer and winter should have some knowledge of and experience in the care of blooded cattle; that it was further necessary and proper in the caring for said herd of cattle that considerable quantities of grain should be fed to them in certain seasons of the year when pasture is not good. He avers that he has employed such suitable and proper men, who have devoted a large part of their time to the care of said herd; that he has expended large sums for grain to be fed to said cattle, which was fed to them at times of the year when said cattle could not procure good pasture, and that such expense, as he estimates, is about $1,600, or $40 per head, per annum, and that it will increase as the herd increases in number; that since the herd came into his possession there have been born of said herd and added thereto 20 calves, 14 of which were male and 6 female; that for the first year the increase in said herd was 12; that for the remaining years for which said contract by its terms is to run he estimates the increase as follows: Second year, 20; third year, 40; fourth year, 60; fifth year, 80; this estimate being based upon the probability that one-half, at least, of the progeny will be females.

That he estimated, at the time of making the contract, that without any considerable misfortune he would have left upon its completion, according to its terms, and the delivery to said Webber of twice the number of cattle received from him, from 125 to 150 head of cattle remaining as his own property; that he estimated and believes that the value of the milk from said herd, annually, is equivalent to about one-fourth the cost of keeping the herd; that the selling value of registered Holstein cattle is considerably more than the selling value of unregistered Holstein cattle; that the male progeny of

said cattle, to be profitable, must be sold young, for breeding purposes, and must be registered before selling.

That at the time of and before making the contract he knew that he might become a member of the Holstein-Fresian Association of America; that the membership fee of said association is $100, but that as to the other regulations of said association and the by-laws thereof he was, at the time of making said contract, and for a considerable time thereafter, entirely ignorant; that article 4 of the by-laws of the association, as printed and circulated by said association, and as amended March 20, 1889, is entitled "Of the Herd-Book," and provides, in section 1 thereof, that said association, which is a corporation, shall publish the Holstein-Fresian Herd-Book; and complainant proceeds to set out particularly several sections of the articles of association, and, among other items, section 7 of said article, as follows: "All animals must be transferred to owners before their offspring are registered;" and section 10 provides that the registry of transfer of ownership of any animal registered in the herd-book will be made on application of the owner.

That by the terms of the contract between himself and Webber the title to the herd delivered to him by Webber, and all the progeny thereof, remained in said Webber, and that the herd-book of the association showed each and all of the cattle so delivered to be owned by said Webber; for which reason he asserts that he was unable to cause the progeny of said herd to be registered in his own name, but that the same must be registered in the name of Webber, and, recognizing this fact, the said progeny, which were four males, were registered in the name of said William L. Webber; and that he applied to Webber to transfer the ownership of said progeny and the certificates of registration to him, so that he might

sell and dispose of the bull calves, not only as their owner, but as their registered owner; and that Webber refused to transfer the same to him, but sent to him the certificates of registration without indorsement.

It is unnecessary at this time to pursue the allegations of the cross-bill further, as it is not in issue upon this hearing, the cross-bill having been dismissed by the court below, and the complainant in the cross-bill not having appealed.

Proofs were taken under the original and cross bills, and the same were brought on for hearing before the Honorable John A. Edget, Circuit Judge, who rendered a decree in said causes as follows:

"These causes having heretofore come on to be heard before the court on pleadings and proofs taken in open court, as in a suit at law, and the court, having considered the same, finds that the said contract mentioned in the pleadings between the parties, by which the said Randall received forty head of Holstein-Fresian cattle from the said Webber, to be kept and cared for upon his three thousand acre farm in Saginaw county, by its terms required the said Randall to keep said cattle upon his said farm in Saginaw county, and care for the same, during the entire term of five years mentioned in the said contract, that the security of the said Webber might not be imperiled or impaired; and finds that the said Randall, in March, 1890, sold the said farm, and shortly after delivered possession thereof, and moved the cattle from said farm to another farm in Saginaw county, which was not provided with the proper facilities for the care of said cattle, and thereafter removed the said cattle beyond the limits of Saginaw county into Ingham county. And, without reference to other questions raised by the pleadings, the court finds that the said Randall was thereby guilty of a breach of said contract, and put it out of his power to perform the same, and that said Webber is entitled to relief in a court of equity by reason thereof.

"It is further ordered, adjudged, and decreed that the

cross-bill of the said Randall be dismissed, with costs to be taxed; and that a receiver be appointed to take the said cattle and their progeny into possession, and cause the same to be put in proper condition for market, and sell the same, bringing the proceeds into court, to abide the further order of the court concerning the same.

"It is further ordered and decreed that the complainant, Webber, is entitled to have the value of the said cattle at the time of the breach of contract by said Randall occasioned by the sale and removal from the three thousand acre farm hereinbefore specified, together with the value of the progeny of said herd, or that would have been realized from said herd had they been properly kept and cared for as provided in the said contract, less a proper allowance for the keeping and care of the herd from the date said Randall took the same into his possession until the date of the breach of the contract, proper allowance being made in the accounting for milk and butter that should have been realized from said herd had they been properly cared for; and that, when said cattle are sold by the receiver, in case the amount realized from said sale shall be less than the value of the cattle at the time of the breach of the contract, together with the progeny, computed as aforesaid, a personal decree shall pass against said Randall for the deficiency, together with interest.

"It is further ordered that to enable the parties to take such further proofs as may be required to fix the measure of complainant's recovery, and also to be heard upon the appointment of a receiver, the cause stand over for further hearing until the 3d day of November, 1890, at eleven o'clock in the forenoon of that day, such proofs to be taken in open court; and that the parties may be at liberty to apply to the court as they may be advised."

After the entry of the decree the parties entered into a stipulation for the appointment of a receiver, and for the sale of the cattle, and that the money be brought into court, which contains the following clause:

"That either of the parties to this suit may purchase at said sale, if the highest bidder; and that an appeal to the Supreme Court by either party from the interlocutory decree heretofore entered shall not in any way be con-

strued to affect the power of the receiver to make such sale; that the sole object of this agreement is to save the expense of the care and maintenance of the cattle pending the controversy, and that the proceeds of the sale of said cattle shall take the place in court of the cattle themselves, and both parties be at liberty to proceed in the cause, by appeal or by motion for a rehearing or otherwise, in the same manner as though such cattle had not been sold, and as though this stipulation had not been made."

Upon this stipulation the circuit judge appointed a receiver, in which order it is stated—

"That an appeal to the Supreme Court of Michigan by either party from the interlocutory decree heretofore entered shall not in any way be construed to affect the power of said receiver to make said sale, and that both parties be at liberty to proceed in this cause, by appeal, by motion for rehearing, or otherwise, in the same manner as though said cattle had not been sold, and said stipulation and this order had not been made."

The complainant, William L. Webber, appealed from the decree, for the reason, as he alleges, that under the proofs and under the contract, correctly construed, the value of the cattle is fixed by the contract, and the decree should be final, and state the amount. He contends that the court below should have found, in addition to what he did find,—

1. That said Randall refused to become a member of the Holstein-Fresian Association, as he agreed in his contract.

2. That said Randall did not care for said cattle after he took them into his possession as such animals are cared for by good breeders.

That, if the court had so found, it would have been apparent that no rule of justice would be satisfied by giving said Webber the value of these cattle as of March, 1890, when they had so greatly depreciated under the

misuse, neglect, and inattention they had received. And he calls attention to the provision of the contract, the third clause of which provides:

"For the purpose of valuing the animals aforesaid, it is agreed that the bull is at this date worth the sum of one hundred dollars; that all the females above the age of one year are worth one hundred and fifty dollars each; and that all the females under the age of one year, in the above list, are of the value of ninety dollars each. But neither party hereto guarantees any future market, nor prices at the end of the five years; it being understood that at the expiration of the five years payment shall be made in kind, and by the delivery of double the number of like sex, ages, and quality as aforesaid."

He contends that this contract, dated November 2, 1888, is a sale of the cattle; that the value of the cattle sold is fixed absolutely in the contract by agreement; that Randall could pay for them in cash at those prices, with interest at 6 per cent., at any time within six months, and if he did not pay for them in cash within six months he was to pay for the cattle in kind by delivering double the number at the expiration of five years; that it was expressly provided that, in case any of the cattle should die after being taken by Randall, the loss should be his, and that the title of said Webber in said cattle continued only as in case of a conditional sale as security; and that whatever loss might be sustained in the herd "is the risk assumed and borne by said Randall, and not by said Webber." And he further claims that all the provisions of the agreement concerning the care which Randall should take of the cattle, and concerning the fact that they were to be registered, had relation—

1. To the security that said Webber retained for payment; and—

2. To insure that the cattle and their progeny at the end of five years should not be deteriorated.

That this was essentially a sale is apparent from the ages of the cattle at the time of the delivery and the ages of those that could be returned; that it was never expected by the parties that the same animals would ever be returned to Webber; and he calls attention to the fact that the bull was three years old when delivered, and at the end of five years he would be eight, and two three-year old bulls must be delivered in his place. Of the 39 females, but five of those delivered in 1888 could by any possibility be returned to said Webber as payment at the end of the five years; all the others would be too old.

The defendant, by his counsel, states in his brief that the rule announced by the court in his order is all wrong, and also the position taken by complainant is without foundation; that the complainant's case, as stated in the bill, is without equity; that the demurrer thereto should have been sustained; that in the opinion of the counsel the contract made by the parties will bear but one construction, which is that complainant owns the cattle, and that he cannot retain ownership and claim also that he has a mortgage; that he not only retains ownership by the terms of the contract, but the herd-book title is in him, and, as the proofs clearly show, until a transfer of ownership should be made defendant could not register either the male or female progeny of the herd; that without a new contract or agreement modifying or changing the one under consideration the defendant could neither realize from the sale of the registered males, nor could he by any possibility deliver at the end of the term a herd of registered cattle; that all these matters and others will be urged upon this Court

upon an appeal from the final determination of the lower court, unless that court changes its opinion.

He insists that the order and decree of the court below is not an appealable order; that it is not final, and that the rights of the parties cannot be determined upon this appeal; that the proofs should have been taken under the interlocutory decree, and then either party or both parties might have appealed to this Court, who would then have had all the proofs before it, and be enabled to render a decree settling all the rights of the parties.

He further insists that to decide the questions raised by complainant requires an examination of the whole record; that such examination will disclose no ground for equitable interference; and that the Court may and should so state and dismiss the bill, with costs.

It thus appears from the briefs of the solicitors for the respective parties that they both request this Court, if the order made is final and appealable, to enter into an examination of the merits of the controversy, and to give a construction to the contract, and to decide the rights of the parties under the contract upon the record now before the Court. This we should be willing to do if we were satisfied that the decree or order appealed from is a final order, but we are clearly of the opinion that it is not. The case comes within repeated rulings of this Court. *Caswell v. Comstock,* 6 Mich. 391; *Demaray v. Little,* 17 Id. 386; *Moore v. Olin,* 6 Id. 396; *Turner v. Chapman,* Id. 396; *Enos v. Sutherland,* 9 Id. 148; *Perkins v. Perkins,* 10 Id. 425.

In *Caswell v. Comstock,* cited above, the decree, after disposing of the rights of the parties, referred it to a commissioner to take proofs with reference to several points, among others, the amount due to defendant

from complainant under the contract, and this Court
held:

"Such a decree is clearly interlocutory, and not final.
No decree, we think, is final that directs a reference to a
master or other officer to do what the court, but for its
power to make such reference, would itself have to do
before it could decide the case. Such references are made
not in execution of the decree, but to relieve the court
of what it would otherwise have to do itself. The acts
and doings of the master in all such cases are in their
nature judicial, and not ministerial, and to be effectual
must be confirmed by the court, when they become the
acts of the court itself."

It was further said that—

"A decree with such a reference can with no more
propriety be called a final decree than a judgment at law
with a reference to a clerk or a jury to assess damages
can be called a final judgment."

And, as was said in *Kingsbury v. Kingsbury*, 20 Mich.,
at page 216,—

"No rights have yet been lost to the appellant, and
until it is known what decree the circuit court will render
upon the final hearing it cannot be known which party
will have cause to be dissatisfied. When the decree is
made, if it should be adverse to the appellant, he will
be able to raise on appeal the same questions which would
be open if this order were appealable."

It will be noticed that the decree in this case directs
that a receiver be appointed to take the said cattle and
their progeny, and cause the same to be put in proper
condition for market, and to sell the same, and bring
the proceeds into court, to abide the further order of the
court concerning the same. This portion of the decree
is in accordance with the prayer of complainant's bill,
and therefore he is not in a position to appeal from it;
while, on the other hand, the defendant, under the
repeated rulings of this Court, could have regarded that

portion of the decree as final, because it dispossesses him of the possession of the property, and he could have appealed, but he has not.

The further order, and that portion complained of by the appellant, requires an accounting to be had and a sale of the cattle, and directs that, when the cattle are sold by the receiver, in case the amount realized from said sale shall be less than the value of said cattle at the time of the breach of the contract, together with the progeny, computed as therein directed, a personal decree shall pass against said Randall for the deficiency, together with interest. There is nothing appearing upon the record by which this Court is authorized to say it will injure the appellant in case this decree should be carried out as written, for it is among the possibilities that a computation of the amount due him, based upon this decree, may realize as much as he claims he would be entitled to under his construction of the contract; and until a final decree is made by the court fixing the amount of money which shall be due to him there is no final order or decree from which appeal can be taken.

The appeal will be dismissed, and the record remanded to the court below for further proceedings.

MORSE, McGRATH, and GRANT, JJ., concurred. LONG, J., did not sit.